FILED
2026 JUN 29
CLERK
U.S. DISTRICT COURT

GREGORY C. BELMONT
℅ CereBel Legal Intelligence
157 East 86th Street, 4th Floor
New York, NY 10028
Telephone (631) 506-8464
belmont@cerebel.law

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| BAM FRANCHISING, INC., AMMON MCNEFF, MATTHEW MCNEFF, JOSH JOHNSON, BRANDON BEST, BAKER BRICKS, LLC, dba SALEM-BAKER BRICKS INC, <br><br> Plaintiffs, <br><br> vs. <br><br> BENJAMIN PAUL SCHNEIDER, RECKLESS BEN LLC, BRYAN MANSEL, VICTOR NGUYEN. <br><br> Defendants. | **REFILED MOTION TO INTERVENE FOR LIMITED PURPOSE AND FOR DECLARATORY RELIEF DECLARING THE STATE TEMPORARY RESTRAINING ORDER EXPIRED BY OPERATION OF LAW** <br><br> **Alternative Relief Requested: Complete Vacatur of Speech-Restrictive Paragraphs 5(j) and 5(k)** <br><br> **EXPEDITED REVIEW REQUESTED PURSUANT TO DUCivR 81-1(c)(2)** <br><br> Case No. 2:26-cv-00593 <br><br> Magistrate Judge Cecilia M. Romero |

Proposed Intervenor Gregory C. Belmont ("Proposed Intervenor" or "Movant")

respectfully moves this Court under Federal Rules of Civil Procedure 24(a)(2), 24(b), and 65 to

intervene in this action for the limited purpose of challenging the speech-restrictive provisions of

the state court's Temporary Restraining Order ("TRO") issued May 28, 2026, and re-entered June

9, 2026.

Pursuant to Local Rule DUCivR 81-1(c)(1), Movant notes this application was originally

filed in the Fourth Judicial District Court for Utah County (Case No. 260402353) and was denied

1

without prejudice by operation of law upon removal. Movant has federalized this refiled motion to assert audience-side constitutional claims and a threshold declaration that the state court's TRO has already expired by operation of law and requests expedited consideration because the challenged speech restrictions continue to impose ongoing First Amendment injury.

**EXPEDITED CONSIDERATION REQUESTED PURSUANT TO DUCIVR 81-1(c)(2)**

Movant requests expedited review. The challenged order functions as an active, unconstitutional prior restraint that suppresses protected marketplace expression during an active consumer controversy. Because any loss of First Amendment freedoms constitutes immediate, irreparable injury, urgent judicial scrutiny is mandated. *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976).

**I. STATEMENT OF RELIEF SOUGHT (DUCivR 7-1(a)(1)(A))**

Movant respectfully requests that this Court enter an order:

1. **Granting Leave to Intervene** under Rule 24(a)(2) or Rule 24(b) for the limited purpose of protecting audience-side First Amendment rights;

2. **Issuing a Declaratory Order** finding that the state court's ex parte TRO expired automatically by operation of law prior to removal pursuant to URCP 65A(b)(2) and the United States Supreme Court's mandate in *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974);

3. **In the alternative, if any portion of the state court TRO is deemed to survive underlying procedural defects or the *Granny Goose* holding**, completely vacating Paragraphs 5(j) and 5(k) in their entirety as unconstitutional pre-adjudication content-takedown mandates and vague, overbroad prior restraints;

4. **Ordering that any speech-protective provisions, safe harbors, or commentary allowances carved out for the named Defendants in a Preliminary Injunction be explicitly extended to cover all independent non-parties**; and

5. **Ordering a Limited Notice-and-Objection Mechanism** or, in the alternative, ordering that any denial of prospective intervention be entered strictly without prejudice to immediate renewal if any party seeks or imposes a renewed speech-restrictive mandate.

**II. STATEMENT OF RELEVANT FACTS (DUCivR 7-1(a)(1)(B))**

The following facts are offered for purposes of this motion and are supported by the attached declaration, exhibits, and the removed state-court record. Movant does not seek merits adjudication of the parties' underlying commercial dispute, but identifies these facts because they bear on standing, impairment, urgency, and the scope of the challenged speech restrictions.

1. **Movant's Status**: Movant is a resident of the New York State, a Premium YouTube subscriber to Defendant Benjamin Schneider's ("Schneider") channel, a paid subscriber to Schneider's Patreon platform, an occasional LEGO toy/game consumer with a direct interest in the underlying marketplace controversy, a commentator on legal issues of public interest, and a member of the public whose ability to receive, evaluate, discuss, and comment upon competing accounts is impaired by the TRO's publication restrictions. Movant possesses an independent, audience-side interest in the commercial practices and legal proceedings underlying this retail controversy. (*See* Exhibit A, Belmont Declaration ¶ 1, 2, 4, and 5).

2. **The State Court Posture and Removal Record**: On May 28, 2026, Plaintiffs obtained an ex parte TRO in the Fourth Judicial District Court for Utah County (Case No. 260402353) (Notice of Removal Ex. D, ECF No. 1-4 ("State Court Record") at 385, State Doc. 23) which was reentered on June 2, 2026 (*State Ct. Rec.* at 398, State Doc. 27) and June 9, 2026 ("TRO") (*State Ct. Rec.* at 494, State Doc. 55). On June 26, 2026, Defendants Schneider, Reckless Ben LLC, and Victor Nguyen filed through counsel a Notice of Removal to this Court (ECF No. 1) which references Movant's certificate of service as triggering event (Id. ¶ 3) and dockets the underlying State Court Record under Exhibit #D (ECF No. 1-4) containing Movant's intervention pleadings. The only other defendant, Bryan Mansel, consented through counsel. (ECF No. 2). Prior to removal, Movant filed a Motion To Intervene For Limited Purpose And To Partially Vacate Temporary Restraining Order on

3

June 11, 2026 (*State Ct. Rec.* at 543, State Doc. 66) tracking these identical constitutional infirmities along with a Motion to Expedite Consideration (State Doc. 96 as of June 29th, due to State Court ministerial docketing delay not in *State Ct. Rec.*) which was fully briefed with opposition (*State Ct. Rec.* at 611, State Doc. 73) and reply (*State Ct. Rec.* at 580, State Doc. 72).  Non-parties, two individuals and an LLC (the "Law/Gorman"), which are participants in the underlying business dispute and who are referenced in the Verified Complaint and indirectly in the TRO, filed motions to intervene and modify TRO on similar grounds as Movant  (*State Ct. Rec.* at 515 and 524, State Docs. 61 and 63).  Before a decision was rendered on Movantt's Motion to Expedite or the intervention motions of Movant and Law/Gorman, the parties filed a joint Motion for Modification of Temporary Restraining Order and Entry of Preliminary Injunction ("Joint Motion") (*State Ct. Rec.* at 616,, State Doc. 79)  to replace the TRO with a preliminary injunction that completely omitted the TRO's primary speech-restrictive paragraphs 5(j) and 5(k) challenged by Movant's Motion to Intervene and that are the subject of this motion to renew (*see* p. 2, item 3, above) and added a speech-protective paragraph that expressly preserves Defendants' ability to engage in currently restrained speech, but did not similarly clarify that independent nonparties remain free to engage in the described speech. (Joint Motion, *State Ct. Rec.* at 616,, State Doc. 79, numbered paragraph 2 at p. 3).  The State Court did not sign the modified TRO (State Doc. 83) citing concerns some behavioral restrictions were too broad and already-removed videos were not addressed; chambers instead advised parties the matter remained set for a hearing on June 30, 2026. Thereafter Movant filed a Notice of Changed Circumstances that narrowed the request for limited intervention to the relief requested herein. (*State Ct. Rec.* at 637, State Doc. 86). Plaintiff filed opposition to the Notice of Changed Circumstances (*State Ct. Rec.* at 642, State Doc. 87) and the proceeding was removed before Movant filed a reply. This

4

motion addresses that opposition.  Upon removal, all pending state court motions were denied without prejudice under local federal practice. (*See* DUCivR 81-1(c)(1).)

3. **Phrasing of the State Order and Lack of Extension Records**: The face of the state court's June 9, 2026, TRO contains an explicit command stating that "This Order remains in effect until such time as the Court enters its ruling on Plaintiffs' Motion for Preliminary Injunction." (TRO ¶ 8). The state record contains no order, memorandum, or docket notation by the state judge establishing "good cause" or setting forth an explicit "reason entered of record" to extend the ex parte order past its standard duration.

4. **Immediate Chilling Effect and Suppression of Willing Speakers**: The speech-restrictive provisions of the TRO have directly cut off Movant's access to information. On June 9, 2026, Defendant Schneider uploaded a video titled "My final message," which garnered over 5,000,000 views, explicitly stating that "Episode 3 is finally finished... but I can't post it," directly attributing his self-censorship to electronic service of the ex parte TRO. (*See* Exhibit A, Belmont Decl. ¶ 6; Exhibit B).

5. **Silencing of Third-Party Non-Parties**: The text and extrajudicial enforcement of the TRO have chilled independent, non-party commentators. On June 9, 2026, a public GoFundMe page titled "Help Bryan Recover His Stolen LEGO Collection"— which had then accumulated $465,847 from over 17,000 citizens to fund a legal defense— was abruptly disabled for approximately 12 hours. (Exhibit A, Belmont Decl. ¶ 8). On June 10, 2026, independent online creator Sheldon Norcross, published a video monologue expressing severe anxiety that his channel would be "silenced next" and taken down for sharing commentary on the case. (Exhibit A, Belmont Decl. ¶ 9; Exhibit C).

6. **Extrajudicial Takedown Demands to Third-Party Platforms**: On May 29, 2026, Plaintiffs transmitted a "Request for Immediate Content Removal Pursuant to TRO" directly to content

hosting company Patreon, attempting to leverage unsealed state court filings to achieve extrajudicial censorship of digital accounts. (Exhibit A, Belmont Decl. ¶ 10; Exhibit D).

7. **Plaintiffs' Contradictory Public Admissions**: On June 4, 2026, Corporate Plaintiff BAM Franchising published an official corporate press release blog admitting to pervasive "gross negligence" at the Salem, Oregon store, acknowledging "operational gaps," validating the existence of an "unauthorized private consignment arrangement" involving Defendant Mansell's collection, and confirming that point-of-sale data showed over $52,000 of the disputed collection was sold without proper authorization. The McNeff Plaintiffs also engaged in several public interviews about the controversy between May 29 and June 10, 2026.  (Exhibit A, Belmont Decl. ¶ 11 and 12; Exhibit E).

## III. LEGAL ARGUMENT

### A. Limited Intervention is Required Under Rule 24(a)(2)

A timely applicant must be permitted to intervene when they claim an interest relating to the transaction that is the subject of the action, and disposition would impair their ability to protect that interest. Rule 24(a)(2) asks whether the movant claims an interest relating to the transaction at issue, whether disposition may practically impair that interest, and whether existing parties adequately represent it. Fed. R. Civ. P. 24(a)(2). The rule is practical, not formalistic; it focuses on impairment as a practical matter rather than strict claim ownership. Movant satisfies every element.

**1. Movant Possesses an Autonomous Right to Receive Willing Speech**. The United States Supreme Court has established that the First Amendment protects the standing and independent, audience-side constitutional right of citizens to receive information and ideas from willing speakers. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976). The Tenth Circuit recognizes that non-parties whose access to

information is actively impaired by judicial speech restrictions have standing to seek immediate relief. *Journal Publ'g Co. v. Mechem*, 801 F.2d 1233, 1235–37 (10th Cir. 1986). Because the TRO forces the wholesale removal of content, it blocks Movant from receiving information he has a lawful right to access, and the existing parties do not adequately represent this distinct audience-side interest.

**2. The Interest Relates Directly to the Speech-Restrictive Injunction.**  Plaintiffs may anticipate arguing that Movant lacks a qualifying interest because he has no proprietary stake in the underlying commercial Lego dispute. That argument relies on an unduly cramped reading of Rule 24 that has been expressly rejected by the Utah Supreme Court. Under governing intervention standards, a movant requires an interest "relating to" the subject of the action, not ownership of the central claim itself. *See* [*Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶¶ 32–35, 297 P.3d 599].

Movant does not seek to litigate the business claims, discovery, damages, general-purpose party status, or participation in the merits of the parties' business claims or counterclaims, except to the limited extent necessary to receive notice of and be heard on any future request for or imposition of speech-restrictive relief; he seeks limited intervention *solely* as to the speech-restrictive temporary, injunctive, prospective  relief. When a court tools its emergency powers to suppress willing speech, an audience member's right to receive that information is directly and practically impaired under Rule 24.

**3. The Unentered Private Stipulation Does Not Moot Intervention.** Plaintiffs may further contend that this intervention is moot because the principal parties signed a private joint stipulation in state court on June 24, 2026, to replace the TRO with a preliminary injunction omitting the speech bans. This argument is a structural misstatement of law. Under both state and federal procedure, a joint stipulation is merely an unadjudicated proposal; it has no binding legal

effect until a judge signs it.

Because the state court explicitly **declined** to enter the proposed order modifying the TRO on June 24, 2026 (State Doc. 83), Paragraphs 5(j) and 5(k) remained fully active, binding, and enforceable at the exact microsecond the case was removed on June 26, 2026. A case cannot be rendered moot by an unexecuted, stalled settlement draft. Post-filing shifts or stipulations by existing litigants cannot be used to strategically defeat an intervention application while preserving an active practical impairment or a state of judicial "limbo." *See* [*Supernova*, 2013 UT 7, ¶¶ 29–31].

**4. Existing Parties Do Not Adequately Represent Movant's Listener Interest.**
Plaintiffs cannot establish that the existing Defendants adequately represent Movant's audience-side rights. The principal litigants are properly focused on protecting themselves from civil liability, financial ruin, and Utah RICO claims. These are rational party choices, but they directly conflict with Movant's independent interest in ensuring that the digital public square is not subjected to overbroad, unconstitutional prior restraints. Counsel for Defendants represent the commercial interests of their specific clients, not paid subscribers, viewers, or independent non-parties whose online platforms and fundraising pages are actively chilled by the shadow of this order. Because the principal parties are structurally incentivized to compromise on speech boundaries to achieve a private litigation settlement, they cannot adequately represent the public's independent right to receive information.

Defendants may rationally trade speech rights for settlement value, litigation certainty, or reduced exposure on claims unrelated to Movant's listener interest. That does not make their representation inadequate in any general sense, but it shows why they cannot necessarily protect Movant's narrower First Amendment interest in ensuring that any silence is not compelled, induced, or distorted by an unconstitutional court-backed restraint.

8

**5. Plaintiffs' Characterizations Do Not Defeat Rule 24.** Any attempt by Plaintiffs to minimize this constitutional interest by branding Movant as a generic "social media trafficker" participating in a "speculative social media feeding frenzy" must be flatly rejected. The First Amendment does not limit its protections to institutional media networks or direct property owners. It directly shields ordinary citizens, consumers, and subscribers who rely on public commentary and investigative journalism to evaluate consumer conduct. The widespread public scale of this retail controversy does not weaken Movant's standing; it amplifies the profound necessity of a clear, adversarial presentation before a court leaves an active prior restraint live on its federal docket.

**B. The State Court TRO Expired and is Unenforceable**

As a threshold matter, this Court should issue an order declaring that the speech-restrictive mandates of the state court's TRO have already expired by operation of law and cannot be enforced absent a new federal order satisfying Rule 65.

Utah Rule of Civil Procedure URCP 65A(b)(2) strictly mandates that every temporary restraining order issued without notice "*shall expire by its terms within such time after entry, not to exceed 14 days, as the court fixes.*" (emphasis added). While the rule allows a court to extend a TRO for an additional 14 days for "good cause shown," it explicitly commands that "*the reasons for the extension shall be entered of record.*"

Here, the state court violated URCP 65A(b)(2) by phrasing its June 9, 2026 order to remain effective indefinitely "until the Court enters its ruling on plaintiffs' motion for preliminary injunction." A state court cannot bypass statutory constraints by simply writing an open-ended expiration date on an ex parte order. Because more than 14 days have elapsed since entry, and because the state judge failed to input any explicit, text-based reasons for an extension into the record, the TRO expired automatically by operation of law while still in state court.

9

Section 1450 preserves state-court orders after removal only until dissolved or modified by the federal district court; it does not enlarge the order's lawful life. In *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423 (1974), the Supreme Court held that an ex parte state TRO issued before removal remains effective after removal no longer than it would have remained effective under state law and, in any event, no longer than Rule 65(b)'s time limits permit. Because Utah Rule 65A(b)(2) required the June 9 TRO to expire within 14 days absent a timely extension for good cause with reasons entered of record, and because the removed state record contains no such extension findings, the TRO expired before removal or, at minimum, cannot continue on this federal docket absent a new Rule 65-compliant federal order.

## C. In the Alternative, the TRO Constitutes an Unconstitutional Prior Restraint

**Audience-Side Rights to Receive Information.** The First Amendment protects listeners and recipients as well as speakers. Government-imposed burdens on receipt of protected expression can independently violate the First Amendment, and citizens may assert their own interest in hearing and debating willing speakers. *Lamont v. Postmaster Gen.*, 381 U.S. 301, 307–08 (1965); *Kleindienst v. Mandel*, 408 U.S. 753, 762–65 (1972). Where willing speakers and willing listeners exist, First Amendment protection extends to the communication, its source, and its recipients alike. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976). Movant's interest is therefore not merely derivative of Defendants' speech rights; it is his own right to receive information restrained by the TRO.

**Tenth Circuit Specific Requirements for Prior Restraints.** The Tenth Circuit applies strict limits to judicial orders restraining protected expression. A speech-restrictive order cannot stand absent a clear and imminent danger, a compelling interest, narrow tailoring, and consideration of reasonable alternatives less restrictive of First Amendment rights. *Journal Publ'g Co. v. Mechem*, 801 F.2d 1233, 1236–37 (10th Cir. 1986). Plaintiffs made no such

10

showing here. The state court did not identify specific unprotected statements, explain why damages or ordinary litigation would be inadequate, or show why narrower relief could not protect any legitimate interest. A wholesale, ex parte video-removal order cannot resolve a commercial dispute by sweeping protected commentary, consumer criticism, and audience rights into a prior restraint.

**Heavy Presumption Against and High Burden of Proof Required for Prior Restraints.** Prior restraints carry a heavy presumption against constitutional validity and require extraordinary justification, particularly when imposed before trial and without identification of adjudicated unlawful speech. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559–70 (1976); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70–72 (1963). Allegations of reputational injury, business disruption, trade disparagement, or defamation do not justify an ex parte content purge. Public criticism of a business actor cannot be enjoined merely because it is harmful, coercive, or intended to pressure the target, and the ordinary remedy for allegedly defamatory or injurious publication is later adjudication and damages, not prior restraint. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419–20 (1971); *\*Near v. Minnesota*, 283 U.S. 697, 713–14 (1931).

**Failure to Satisfy Utah Rule 65A(d) and Federal Rule 65(d)'s Explicit Specificity Mandates.**

Unlawful Reference to Pleadings. Paragraph 5(k) also fails Utah Rule of Civil Procedure 65A(d) and Federal Rule of Civil Procedure 65(d). Both require an injunction or restraining order to state its reasons, state its terms specifically, and describe the restrained or required acts in reasonable detail without referring to the complaint or another document. Paragraph 5(k) orders removal of "the current Publications (as such term is defined in the Verified Complaint)," thereby defining a contempt-backed speech restriction by reference to a separate pleading. That

11

violates the four-corners requirement and leaves affected persons unable to determine from the order itself what speech must be removed. See *Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1168–69 (10th Cir. 2009); *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996).

Failure to Identify Specific Videos. The defect is compounded by the catchall language reaching "any other video, audio or other form of publication" that "in any way relate[s]" to the dispute. That language does not identify specific videos, statements, URLs, files, channels, posts, speakers, or adjudicated unlawful content. It leaves parties and nonparties guessing what speech may trigger contempt. See *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 376 (10th Cir. 1996).

**Defamation, Business Disparagement, and Commercial Pressure Cannot Justify Pre-Trial Injunctions.** Nor can Plaintiffs avoid First Amendment scrutiny by labeling protected criticism as "harassment." True threats require a serious expression of intent to commit unlawful violence, not harsh criticism, satire, accusation, public pressure, or denunciation. *United States v. Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015); *United States v. Heineman*, 767 F.3d 970, 972–73 (10th Cir. 2014); *Counterman v. Colorado*, 600 U.S. 66, 69–75 (2023). Offensive online commentary, consumer grievances, and public criticism remain protected unless they fall within a recognized exception. C1.G v. Siegfried, 38 F.4th 1270 (10th Cir. 2022). The TRO identifies no such exception with the specificity required before protected expression may be removed or restrained.

**Irreparable Harm and the Critical Urgency Demanded by *Elrod.*** The compulsory takedown of investigative reports regarding a retail franchise's admitted "gross negligence" causes immediate, irreversible damage to the public marketplace of ideas. Every day that Paragraph 5(k) remains operative constitutes an independent constitutional injury. "The loss of

First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality decision)

**Tenth Circuit Boundary: "Harassing" Conduct vs. "Protected Criticism".** Nor can Plaintiffs avoid First Amendment scrutiny by labeling protected criticism as "harassment." True threats require a serious expression of intent to commit unlawful violence, not harsh criticism, satire, accusation, public pressure, or denunciation. *United States v. Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015); *United States v. Heineman*, 767 F.3d 970, 972–73 (10th Cir. 2014); *Counterman v. Colorado*, 600 U.S. 66, 69–75 (2023). Offensive online commentary, consumer grievances, and public criticism remain protected unless they fall within a recognized exception. *C1.G v. Siegfried*, 38 F.4th 1270 (10th Cir. 2022). The TRO identifies no such exception with the specificity required before protected expression may be removed or restrained.

**D. The Prospective Speech Restrictions are Vague and Overbroad**

Alternatively, if Paragraph 5(j) remains operative notwithstanding Rule 65(b)'s time limits and Granny Goose, it should be severed and vacated. The provision prospectively restricts speech characterized as "misleading," "harassing," or "interfering," but provides no objective boundary between prohibited conduct and protected commentary.

A judicial order restricting speech must give persons of ordinary intelligence a reasonable opportunity to know what is prohibited. Vague speech restrictions offend due process by failing to provide fair warning and, where First Amendment activity is implicated, chill protected expression by causing speakers to steer wider than necessary. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972); *Buckley v. Valeo*, 424 U.S. 1, 76–77 (1976). Paragraph 5(j)'s undefined terms leave speakers, listeners, and nonparties to guess what criticism, commentary, or consumer discussion may trigger contempt.

The provision is also overbroad. Speech restrictions must be narrowly drawn so they do

not sweep protected expression into a prohibition aimed at unprotected conduct. *Broadrick v. Oklahoma*, 413 U.S. 601, 611–13 (1973); *Gooding v. Wilson*, 405 U.S. 518, 521–22 (1972). Paragraph 5(j) reaches future commentary about the dispute without identifying specific statements, speakers, platforms, or adjudicated unlawful content.

Finally, Paragraph 5(j) improperly restrains future expression based on speculation that future speech will be unlawful. *Vance v. Universal Amusement Co.*, 445 U.S. 308, 315–16 (1980). An ex parte TRO cannot give private litigants a contempt-backed mechanism to police future public commentary before the challenged speech exists and before its lawfulness has been adjudicated. Paragraph 5(j) should therefore be vacated or, at minimum, narrowed to comply with Rule 65 and the First Amendment.

**E. The Necessity of Prospective Notice Mechanisms to Prevent Reversible Prior Restraints**

Prospective notice, objection, and limited-intervention protections are warranted because Plaintiffs already obtained an ex parte state TRO containing sweeping speech restrictions without meaningfully presenting the First Amendment and prior-restraint constraints that governed the relief they sought. A party seeking ex parte speech-restrictive relief should not be permitted to secure emergency censorship first, leave the constitutional scrutiny for later, and then claim no continuing practical impairment remains once protected speech, platform access, creator revenue, and public fundraising activity have already been chilled.

That history creates a concrete risk that similar overbroad relief could again be sought on this federal docket by motion, stipulation, or proposed order before final adjudication. Plaintiffs' prior use of emergency injunctive process did not affect only Defendants; it extended to third-party platforms, independent creators, and public fundraising activity, thereby impairing Movant's audience-side interest in receiving information. Limited prospective notice is a modest extension of the recognized practice of allowing nonparties to intervene for the limited purpose

of challenging court-imposed restrictions on access to information. See *United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); cf. *United States v. Antar*, 38 F.3d 1348, 1352 (3d Cir. 1994). Such a mechanism would ensure that any future request for publication limits, content takedowns, platform-directed relief, crowdfunding restrictions, confidentiality restrictions, or nondisparagement restraints receives adversarial First Amendment review before this Court's injunctive authority is again invoked or misunderstood as authority to suppress protected nonparty speech.

## IV. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant limited intervention, declare the state TRO expired and unenforceable, or alternatively dissolve or modify Paragraphs 5(j) and 5(k), ensure any explicit speech protective provisions in preliminary injunction that apply to Defendants apply to all non-parties, and grant the limited prospective notice or renewal relief requested above.

A proposed order is submitted herewith in accordance with DUCivR 7-1 as Exhibit G.

DATED this 29th day of June, 2026.

Respectfully submitted,


/s/ Gregory C. Belmont
Gregory C. Belmont
Proposed Intervenor, Pro Se

## MOVANT'S INDEX OF EXHIBITS

Pursuant to Local Rule DUCivR 7-1, Movant Gregory C. Belmont respectfully submits the following index of exhibits accompanying his Refiled Federal Motion to Intervene:

| Exhibit | Description | Source Record Reference |
|---|---|---|
| **Exhibit A** | Declaration of Gregory C. Belmont in Support of Motion to Intervene | Filed Herewith |
| **Exhibit B** | Video Transcript of Defendant Benjamin Schneider's video, "My final message" (June 9, 2026) | Filed Herewith |
| **Exhibit C** | Video Transcript of Independent Creator Sheldon Norcross Monologue (June 10, 2026) | Filed Herewith |
| **Exhibit D** | Video Transcript of Patreon CEO Jack Conte (May 29, 2026) | Filed Herewith |
| **Exhibit E** | Printout of BAM Franchising Corporate Press Release Blog admitting operational gaps (Published June 4, 2026) | Filed Herewith |
| **Exhibit F** | Printout of BAM Franchising Corporate Press Release Blog admitting operational gaps (Published June 29, 2026) | Filed Herewith |
| **Exhibit G** | Proposed Order | Filed Herewith |