R. SCOTT YOUNG (10695)
MELINDA K. BOWEN (13150)
HAILEY WINN (20420)
**SPENCER FANE LLP**
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
mbowen@spencerfane.com
hwinn@spencerfane.com
*Attorneys for Defendants Benjamin Paul Schneider, Reckless Ben LLC, and Victor Nguyen*

---

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| BAM FRANCHISING, INC., AMMON MCNEFF, MATTHEW MCNEFF, JOSH JOHNSON, BRANDON BEST, BAKER BRICKS, LLC, dba SALEM-BAKER BRICKS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>BENJAMIN PAUL SCHNEIDER, RECKLESS BEN LLC, BRYAN MANSELL, and VICTOR NGUYEN,<br><br>Defendants. | **SUPPLEMENTAL MEMORANDUM SUPPORTING DEFENDANTS BENJAMIN PAUL SCHNEIDER, VICTOR NGUYEN, AND RECKLESS BEN LLC'S SPECIAL MOTION FOR EXPEDITED RELIEF AND FOR PARTIAL DISMISSAL OF PLAINTIFFS' VERIFIED COMPLAINT**<br><br>Case No. 2:26cv593<br><br>Judge David Barlow |

Pursuant to the Court's order granting leave to file (Dkt. 49), Defendants Benjamin Paul Schneider, Reckless Ben LLC, and Victor Nguyen (collectively, "Reckless Ben") respectfully submit this supplemental memorandum supporting their Special Motion for Expedited Relief and for Partial Dismissal of Plaintiffs' Verified Complaint (Dkt. 37, "Motion").

## INTRODUCTION

Nine days after Reckless Ben filed the Motion seeking dismissal of seven causes of action in this case, Plaintiff Josh Johnson participated in a recorded telephone call in which he made repeated statements that further support dismissal, particularly when those statements are considered along with the other facts and arguments previously raised in the Motion.

Mr. Johnson is not only a named plaintiff in this case; he is one of the two individuals who verified the Complaint. Yet he has now confirmed facts and supported arguments on which the Motion turns. Mr. Johnson admitted that at least some of the Mansells' LEGOs were in BAM's possession, that he was "personally responsible" for them, that Plaintiff Ammon McNeff refused to return them, and that the collection was ultimately returned and/or paid for so that Bryan Mansell was "made whole." He also confirmed that he "really like[s] Ben," believes Ben was "trying to do the right thing," and owes Ben an apology. These admissions come not from Reckless Ben's reporting or from any compulsion by Reckless Ben. They come from Mr. Johnson's own mouth in voluntary statements posted publicly. And they confirm the substantial truth of Reckless Ben's protected speech and undermine any RICO claim and any claim based on alleged defamation. The Court should supplement the record with these statements and dismiss the claims identified in the Motion with prejudice. Alternatively, Reckless Ben should have the opportunity to conduct discovery as to the statements made by Plaintiffs, as those statements directly affect the Court's decisions to be made under UPEPA and other applicable law.

## SUPPLEMENTAL STATEMENT OF FACTS

1. On September 18, 2026, Reckless Ben filed the original Motion that this memorandum supplements. *See* Dkt. 37.

2. Nine days later, on September 27, 2026, Plaintiff Josh Johnson participated in a recorded phone call posted in part to YouTube. *See* https://www.youtube.com/watch?v=cC0xKlc_42o, **Ex. 1**. The same day, the full call was posted to Patreon. *See* https://www.patreon.com/MattyAppleseed999/posts/1-hour-call-with-170666704, **Ex. 2**. The full call was also later posted to YouTube. *See* https://www.youtube.com/watch?v=FZYVqrQiV4Y, **Ex. 3**.

3. In the videos cited above, Mr. Johnson made the following admissions:

**YouTube Video:**

- "Ben, I think in his heart he's trying to do the right thing." (3:16)
- "***I'm glad that Bryan got . . . that we were able to give him all his LEGOs back and pay him***." (3:22, emphasis added)
- "The first time Bryan comes in the store . . . I'm like, ***I'll continue the consignment***." (7:32, emphasis added)
- "***Ammon didn't want to give Bryan his LEGOs back***." (8:38, emphasis added)
- "I got done dirty by my boy (Ammon) in more than one way." (16:45)
- "Between you and me, I love Ammon, but I got done dirty on all these things." (21:16)
- "I don't have anything to do with Matt and Ammon." (23:21)
- "And I'm completely walking away and washing my hands of Bricks and Minifigs." (23:33)
- "***I feel like I owe Ben an apology*** for swearing at him." (23:41, emphasis added)

**Patreon Video (later posted to YouTube):**

- "People think I'm a bad guy, but at the end of the day, I was responsible for Bryan's sets that were left at the store, right?" (33:08)
- "The first time Bryan comes in . . . and tells me about the stuff, I'm like, cool, I'll buy it from you or ***I'll continue the consignment***." (33:51, emphasis added)
- "***Ammon didn't want to give Bryan his LEGOs back***." (35:17, emphasis added)
- Explaining "Brandon had showed me the LEGOs in the cupboards" and stating he then called Mr. Mansell and said "Bryan, come get your stuff. Brandon showed me where it was." (35:28-35:49)
- Referring to Ammon, "I got done dirty by my boy in more than one way." (42:10)
- "***I'm just glad that Bryan has his LEGOs back, that Bryan's made whole***. You know what I mean? That's what's important to me." (43:12, emphasis added)
- "My part is that I'm happy that ***I can have a clear conscience that Bryan has his LEGO sets back***." (44:10, emphasis added)

- "Like I said, man, at the end of the day, like, my part, is Bryan, and that's important to me that he got taken care of. . . . Between Bryan, Bryan not wanting it, Ben not getting it when I sent him in there to get it, ***Ammon not wanting to give it to him***, I'm just happy the dude has his LEGO back and that he's taken care of. That's so important to me." (48:05, emphasis added)
- "And I feel bad that I was . . . ***I wish Ben the best. I feel bad that I yelled at him and told him to F off***." (51:05, emphasis added)
- "***All I wanted to do was give this guy his LEGO back***." (51:50, emphasis added)
- When asked about why Brandon Best said no to returning the LEGOs to Mr. Mansell, Mr. Johnson states, "Brandon never said no. ***AMMON and MATT***." Then when asked to confirm that Ammon and Matt McNeff said no to returning the LEGOs, Mr. Johnson says, "I don't really care what they would say, . . . the only thing that really mattered to me was that Bryan got his stuff back, that Bryan's taken care of, right? I don't want Bryan to get screwed." (52:30, emphasis added)
- "***I feel like I needed to get Bryan his stuff back, and he did***. . . . And ***I feel like I owe Ben an apology*** for swearing at him." (55:35, emphasis added)
- "I did what I needed to accomplish, and that was taking care of Bryan." (56:20)
- "But you would say sorry to Ben at the end of the day, for like swearing at him or treating him the way you did? ***Yeah, I feel really bad about that***." (56:24, emphasis added)
- "***I really like Ben***." (56:52, emphasis added)
- "Like, I feel like I've done my repentance part and made sure that Bryan got taken care of and got paid and he got the LEGOs back." (57:47)
- "I want to do my part to do the right thing, and that's making sure that Bryan got taken care of" (1:00:27)
- "At the end of the day, there was those sets that were left in the store that I was personally responsible for, and I feel that part is done. Bryan's been taken care of. You know what I mean? I've always felt heart sorry for Bryan." (1:03:45)

4. In addition, Mr. Johnson continued communicating with the same interviewer, Matty Appleseed, and made additional statements relevant to the motion:

- In texts between Mr. Johnson and Matty Appleseed,[1] Mr. Johnson stated, "I'm getting the prosecutor to drop Ben's charges" and "I told the procedure to drop the charges." *See* https://www.youtube.com/watch?v=lFJQf4owkIw, **Ex. 4**.
- In a subsequent recorded phone call posted to YouTube, Mr. Johnson also explained that he observed LEGO sets in the Salem store: "Well, I could tell you what I saw in the back after Bryan the next day or whatever. There was like these black cupboards, and it was one and a half of them were full, and it looked like there would be about thirty sets in there." *See* https://www.youtube.com/watch?v=SkwsdK8xLUs at 9:55, **Ex. 5**.

[1] To the extent these texts require additional foundation, Reckless Ben requests limited discovery as permitted by UPEPA. *See* Utah Code § 78B-25-104(4).

## ARGUMENT

All of the above statements support Reckless Ben's Motion and the arguments made in the Motion, and the Court may consider the statements as public information and because they are "evidence that could be considered in ruling on a motion for summary judgment," which UPEPA expressly permits the Court to consider. Utah Code § 78B-25-106. Mr. Johnson's recorded, publicly published admissions fit squarely within that standard.

Turning to the substantive arguments in the Motion, the statements above bear on the second step of the Court's analysis—namely, whether Plaintiffs' RICO and defamation-based claims are legally viable. As is true for the other facts and statements identified in the Motion, Mr. Johnson's statements further confirm that Plaintiffs' claims must fail for multiple reasons.

### I. MR. JOHNSON'S ADMISSIONS FURTHER NEGATE ANY CIVIL RICO CLAIM.

First, the RICO claim requires Plaintiffs to prove "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Gaddy v. Corp. of Pres. of Church of Jesus Christ of Latter-day Saints*, 665 F. Supp. 3d 1263, 1294-95 (D. Utah 2023). Mr. Johnson's statements reinforce the conclusion that Plaintiffs cannot establish these elements.

Beginning with the enterprise element, an association-in-fact enterprise must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946, (2009). The Motion argues that Plaintiffs cannot plead such an enterprise. Mr. Johnson's admissions confirm the same, particularly as to the necessary purpose and relationships between defendants.

Plaintiffs allege that the Reckless Ben Defendants conspired with Mr. Mansell, Ms. Law, and others to injure Plaintiffs. But Mr. Johnson has now stated he "really like[s] [Reckless] Ben" and believes Reckless Ben "in his heart . . . [is] trying to do the right thing." These statements undermine any inference that Reckless Ben specifically acted with an improper or unlawful purpose. Plaintiffs' statements also contradict any suggestion that the defendants together had an improper common purpose or the requisite RICO relationship. Mr. Johnson instead made clear multiple times that he was "glad that Bryan has his LEGOs back, that Bryan's made whole." These statements mirror BAM's own public statements to the same effect, as explained in the Motion. With repeated admissions that Mr. Mansell required some remedy to be "made whole," Plaintiffs have expressly disclaimed the relationships and common purpose that a RICO enterprise requires.

In fact, Mr. Johnson's admissions show a conspiracy between the Plaintiffs to defame Reckless Ben and Mr. Mansell and deflect their own misconduct, or at the very least discord among the Plaintiffs that refutes any conclusion that they all were injured by some alleged RICO conspiracy involving Reckless Ben. Mr. Johnson states he "got done dirty by [his] boy (Ammon)," does not "have anything to do with Matt and Ammon," and is "washing [his] hands of Bricks and Minifigs." These are not statements suggesting a RICO violation that harmed all Plaintiffs; they instead confirm that Plaintiffs have not been harmed, or if they have, the harm has been inflicted by Plaintiffs against one another, not by Reckless Ben.

Furthermore, Mr. Johnson's statements eliminate any factual support for the required unlawful activity that must be present to support a RICO claim. The only objectively verifiable conduct Plaintiffs identify would be reporting by Reckless Ben which included statements that the Mansells' LEGOs were taken and not returned. But, again, Mr. Johnson has now admitted this

reporting was substantially accurate, as explained further below. Truthful reporting of a property dispute is not racketeering.

To the extent Plaintiffs have also relied on criminal charges against Mr. Schneider to establish the requisite predicate acts for RICO purposes, *see* Compl. at 58-65, Mr. Johnson also acknowledged that he wants the criminal charges against Mr. Schneider to be dropped and has asked the prosecutor to take the necessary action to do so. Requesting that criminal charges should be dismissed also confirms that the same underlying criminal accusations cannot constitute unlawful activity to support a RICO claim.

## II. MR. JOHNSON'S ADMISSIONS CONFIRM THE TRUTH OF RECKLESS BEN'S SPEECH AND DEFEAT ALL DEFAMATION-BASED CLAIMS.

Turning to Plaintiffs' defamation-based claims (including those in the second, third, fourth, fifth, tenth, and eleventh causes of action), each of these claims rests on the premise that Reckless Ben ***falsely*** reported that Plaintiffs "stole" the Mansells' LEGOs. As explained in the Motion, the generalized statement that Plaintiffs "stole" items cannot be defamatory because it cannot be objectively confirmed and because it does not refer to any specific criminal act.

To the extent the reports of "stealing" can be defamatory in nature, however, "truth is an absolute defense" which can be established where the challenged statement "is true in substance." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991). Especially when combined with the other facts and statements cited in the original Motion, Mr. Johnson's subsequent statements establish substantial truth. Mr. Johnson admitted that the Mansells' sets "were left at the store" and/or were otherwise in Plaintiffs' possession, including by stating that "Brandon had showed [Mr. Johnson] the LEGOs in the cupboards" and by repeatedly admitting that Mr. Mansell was told to come to the store to retrieve his sets. When the time came to do so, however, Mr. Johnson

did not return the sets because Plaintiffs Ammon and Matthew McNeff "didn't want to give Bryan his LEGOs back." Mr. Johnson claims he always wanted to return the sets to the Mansell family, which necessarily recognizes that Plaintiffs had LEGO items that belonged to the Mansells, and which directly contradicts the Complaint. Further, it confirms the truth of Reckless Ben's reporting—i.e., Plaintiffs had items that belonged to the Mansells and did not return them. In other words, Plaintiffs stole LEGOs from the Mansells.

This conclusion is further reinforced by Mr. Johnson's repeated confirmation that the Mansell collection was ultimately returned and paid for and/or that Mr. Mansell was otherwise "made whole." These admissions mirror and reinforce the admissions already in the record—BAM's acknowledgment of the Mansells' "genuine loss" and its unqualified apology. *See* Motion at 25. Thus, in multiple ways and through multiple statements made by multiple Plaintiffs, it has been confirmed that Plaintiffs possessed the Mansells' property, refused to return it, and then later returned and/or paid for it when Reckless Ben brought the truth to light. Any "[i]nsignificant inaccuracies of expression" cannot defeat the truth defense. *Brehany*, 812 P.2d at 58. Because Reckless Ben's speech is substantially true, all defamation-based claims fail. The claims also fail for the other, independent reasons argued in the Motion.

On a related note, Mr. Johnson's admissions also defeat Plaintiffs' bona fide purchaser theory, on which several claims depend. Although Mr. Johnson at times stated that the LEGO sets at issue belonged to Plaintiffs, Mr. Johnson also confirmed that he knew of and planned to honor the Mansells' consignment agreement:

- "I'll continue the consignment."
- "I'll buy it from you or I'll continue the consignment."
- "I'm willing to continue this consignment."

Plaintiffs cannot simultaneously claim they took the store free and clear of the consignment while also admitting—through the same plaintiff who verified the Complaint—that the consignment was recognized and continued.

With the bona fide purchaser theory eliminated, with truth as a complete defense, and with all the other legal flaws described in the Motion, all defamation claims fail, as do any derivative claims. Although the statements and facts in the Motion support this conclusion on their own, Mr. Johnson's admissions remove any remaining doubt that dismissal should be granted as to any causes of action based on alleged defamation.

## III. THE REMAINING CHALLENGED CLAIMS FAIL FOR THE REASONS STATED IN THE MOTION.

Mr. Johnson's admissions reinforce, and do not alter, the independent grounds for dismissing Plaintiffs' IIED and unjust enrichment claims set out in the Motion. The corporate Plaintiffs cannot experience emotional distress, the Complaint pleads no distinct individual IIED injury, and Reckless Ben's speech is not "outrageous" conduct. The unjust enrichment claim fails because Plaintiffs conferred no benefit on Reckless Ben and because it rests on the same defective defamation theory that has been undermined over and over again by Plaintiffs' own statements and admissions. Indeed, Mr. Johnson's admissions confirm the substantial truth of the speech and remove the required premise on which Plaintiffs' claims depend.

## IV. THE COURT SHOULD ORDER LIMITED DISCOVERY IF THE MOTION IS IN QUESTION OR DENIED.

To the extent the Court has any lingering questions about whether the Motion should be granted, UPEPA provides an option for the Court short of denying the Motion outright. Namely, the Court "may allow limited discovery" to determine whether the burden under UPEPA has been

satisfied and if discovery is needed to provide the information the Court requires. *See* Utah Code § 78B-25-104(4). If the Court is not prepared to grant the Motion in full or in part, Reckless Ben requests limited discovery that will allow the parties to explore the various statements made by Plaintiffs, as identified in both the Motion and this supplement.

**CONCLUSION**

For the reasons set forth above and in the Motion itself, the Court should dismiss multiple claims with prejudice, including those for RICO violations, defamation per se, defamation, false light, conspiracy, intentional infliction of emotional distress, and unjust enrichment. The Court should also award Reckless Ben all attorneys' fees and costs incurred in bringing the Motion and this supplement.

DATED this 3rd day of November, 2026.

**SPENCER FANE LLP**

*/s/ R. Scott Young*
R. Scott Young
Melinda K. Bowen
Hailey Winn
*Attorneys for Defendants Benjamin Paul Schneider, Reckless Ben LLC, and Victor Nguyen*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2026, I electronically filed the foregoing **SUPPLEMENTAL MEMORANDUM SUPPORTING DEFENDANTS BENJAMIN PAUL SCHNEIDER, VICTOR NGUYEN, AND RECKLESS BEN LLC'S SPECIAL MOTION FOR EXPEDITED RELIEF AND FOR PARTIAL DISMISSAL OF PLAINTIFFS' VERIFIED COMPLAINT** with the Clerk of the Court using the CM/ECF System:

Wm. Kelly Nash
Justin T. Rich
Mina S. Ghobrial
Dentons Durham Jones Pinegar, PC
1557 W Innovation Way, Ste. 400
Lehi, UT 84043
Kelly.nash@dentons.com
Justin.rich@dentons.com
Mina.ghobrial@dentons.com
*Attorneys for Plaintiffs*

John C. Clarke
Edward Decker
Miller Nash LLP
1140 SW Washington St., Ste. 700
Portland, OR
John.clarke@millernash.com
Edward.Decker@MillerNash.com
*Attorneys for Defendant Bryan Mansell*

/s/ Annette Gamero